# EXHIBIT A

Confidential & Privileged

Employment Agreement
Between FF and HL
(January 25, 2018)

This Employment Agreement ("Agreement") sets forth the terms and condition of employment of Hong Liu (aka (Henry) Hong Liu, "HL") at FF Global Holdings Ltd., and Smart King Limited which owns 100% of and controls such entities including, without limitation, FF Global Holdings Ltd., Faraday & Future Inc., LeSEE (in VIE Structure), City Sky Limited, d/b/a Faraday and their successors, assignees and transferees ("FF"). These Terms ("Terms") supersede and replace any and all previous agreements and other agreements as may be specifically referred to herein, between the parties. If any provision of these Terms is ineffective in whole or in part, the remainder of the Terms shall remain effective. The Terms shall be constructed in accordance with and governed by the laws of the State of California without regard to otherwise governing principles of conflicts of law.

Position & Duties:
FF shall appoint HL Senior Board Member of FF Global Board; Global Chief Administrative Officer, with the Chinese translation of 全球行政总裁, or other similar and comparable title as may be further discussed and agreed, and concurrently the Global General Counsel at HL's choice, and the Global Senior Advisor of FF, directly reporting to FF's CEO. FF shall give HL adequate authority and support in performing his duties. HL's duties and responsibilities shall be commensurate with such positions, and subject to typical exceptions for serving on other civic/charitable/corporate boards with no direct conflict of interest with FF and for managing personal investments.

Term:
HL shall commence as soon as practical and expects to be no later than February 1, 2018 or other days as may be mutually agreed, based on agreed Terms. For formality purpose only, FF may or may not ask HL to sign the standard form of employment letter ("Offer Letter") applicable to all executives and employees of FF in U.S.A. when joining the company, however, FF has expressed agreed and specifically acknowledged that the Letter and all its contents shall be superseded and overridden by this Agreement. FF shall guarantee HL's employment and base salaries as provided in the Terms for five years except for HL decides to leave FF at his own. Thereafter such employment shall continue at the then same levels of responsibilities and compensation including the continued annual amount of signing bonus and other benefits as provided in this Agreement until terminated by either party, upon 90 days advance notice, pursuant to the Terms.

Confidential & Privileged

Base Salaries:

FF shall pay HL a minimum annual base salary of $1,000,000.00, in semi-monthly (bi-weekly) installments, for five years. If HL is terminated by FF for any reason during the five year term he will be entitled to receive any remaining portion of the five years of base salaries not yet paid in a lump sum. Base salary will be reviewed on an annual basis for increases in accordance with the review process for senior level executives of FF.

Signing Bonus:

FF shall pay HL a signing bonus of $3,000,000.00, payable in five equal installments, with the first installment paid upon the signing of the Agreement and each of the remaining installments paid at each of the following four anniversary of HL's start of employment at FF and paid in lump sum in the event of an early termination by FF during the five year guaranteed employment term.

Bonus Opportunity:

FF shall award HL discretionary annual bonus based on annual review. Annual bonus will be reviewed on an annual basis for increases in accordance with the review process for senior level executives of FF. FF shall give HL access to special Bonus based on a percentage of overall transactions, including successful equity and debt financing, China Joint Venture, and other special projects and important tasks, etc., in which HL plays one of the leading roles of the project group and makes substantial contributions.

Equity Grants:

FF shall entitle HL to FF's long-term and short-term incentives. FF shall grant HL at minimum cost required by law and outright, 2% of FF's total equity shares pre Series A dilution in the form of restrictive stocks or equity option as HL may select based on any of FF's available equity grant forms to select from, namely 20,000,000.00 equity shares representing 2% of the total and all of 1,000,000,000.00 equity shares of FF pre Series A, as FF has represented and warranted, with the FF established and standard equity share or option vesting schedule and any of FF's earliest available vesting schedules as HL may select and with adequate consideration of tax benefits available to HL. Any and all of the remaining unvested portion of such 2% of the total shares shall become immediately and fully vested to HL upon any early termination by FF of HL's employment within the guaranteed employment term with FF.  Such an early termination can only be effectuated based on the specific cause of a serious breach of fiduciary duty to FF as a senior executive of FF after fully adjudicated against HL by a competent court in the United States, and HL will be fully covered by FF with executive indemnifications. FF has represented that it had successfully completed first closing of Series A financing in December 2017, which is subject to CFIUS approval and it is possible that the global corporate structure of FF may be adjusted in compliance with any decisions to be concluded by CFIUS, which FF represents and warrants that it will ensure that provisions concerning HL as contained in this Agreement shall not be adversely affected.   FF has further



Confidential & Privileged

represented that there are no multiple classes of shares with different rights and values offered to employees except the Founder (Yueting Jia, "YT" himself). HL will act in concert with the Founder under the circumstances permitted by law.

Benefits/PTO:

FF shall entitle HL to participate in all benefit plans and programs at the same level with all senior level executives of FF, including, without limitation, corporate housing, transportation, retirement, welfare, vacation and PTO, insurances including health, life, and D&O. FF shall honor and adopt all employee and executive friendly best practices in favor of HL as a valued senior executive of FF, with regard to severance payments, change of control, parachute payments, tax treatments and any other customary executive compensation provisions. HL is entitled to indemnification from FF on terms no less than any other executives and employees.

Relocation:

FF shall pay for all HL's reasonable relocation costs and expenses as a senior executive, including, without limitation, family house-hunting trips, moving and storage of household goods, settling in allowances, interim living etc.

Survivor Benefits:

HL is entitled to death benefits if he dies during the five year term and during his employment at FF, including two year of base salary for his surviving spouse and children. Upon his death vesting schedules for his unvested equity interests shall have a two-year acceleration and all vested equity interests will pass to his surviving spouse and his children with adequate consideration of tax benefits to his survivors.

Signed by,

Signature: _____
For & authorized by & on behalf of FF
Position:
Printed Name: Teddy Kang

Signed by,

Signature: _____
Hong Liu
Printed Name: Hong Liu

Jointly signed and acknowledged by:

Signature: _____
Board Director, FF
Jiawei Wang

3