**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
                                                           :
HONG LIU,                                                  :
              Plaintiff,                :
                                                           :  Case No.: 1:20-cv-00019-GBD
        -v.-                              :
                                                           :
FARADAY&FUTURE INC., SMART KING                            :
LTD., JIAWEI WANG, and CHAOYING                            :
DENG,                                                      :
                                                           :
              Defendants.               :
-----------------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

SUMMARY OF THE COMPLAINT'S RELEVANT ALLEGATIONS ..................................... 3

ARGUMENT ....................................................................................................................... 7

I.  THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ................... 8

    A.  The Court Has Personal Jurisdiction Over Defendants Pursuant To CPLR §
        302(a)(3)(ii) ......................................................................................................... 8

    1.  Defendants Committed Tortious Acts In California, And The Complaint's Causes
        Of Action Arise From Those Acts ......................................................................... 9

    2.  Defendants Should Have Expected Their Fraudulent Misrepresentations To Have
        Consequences In New York ................................................................................ 10

    3.  Defendants Derive Substantial Revenue From Interstate Or International
        Commerce ......................................................................................................... 11

    4.  Defendants' Tortious Acts Injured Plaintiff In New York .................................... 13

    B.  The Court Has Personal Jurisdiction Over Defendants Pursuant To CPLR §
        302(a)(1) ........................................................................................................... 15

    1.  Defendants Transacted Business In New York By Establishing An Employment
        Contract With Plaintiff ....................................................................................... 15

    2.  Defendants Transacted Business In New York By Executing A Securities
        Transaction In New York .................................................................................... 17

    C.  Personal Jurisdiction Over Defendants Comports With Due Process ............................. 18

    1.  Defendants Have Minimum Contacts With New York ......................................... 18

    2.  The Exercise of Jurisdiction Is Reasonable ........................................................ 19

II.  VENUE IS PROPER IN THE SOUTHERN DISTRICT OF NEW YORK ................... 21

CONCLUSION .................................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,

    677 F.3d 60 (2d Cir. 2012)................................................................ 17

*Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*,

    98 F.3d 25 (2. Cir. 1996)................................................................... 16

*A.I. Trade Fin., Inc. v. Petra Bank*,

    989 F.2d 76 (2d Cir. 1993)................................................................ 14

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,

    171 F.3d 779 (2d Cir. 1999).......................................................... *passim*

*Bankers Tr. Co. v. State St. Bank & Tr. Co.*,

    1998 WL 355418 (S.D.N.Y. July 2, 1998) ……………………………………………..14

*Bastille Properties, Inc. v. Hometels of Am., Inc.*,

    476 F. Supp. 175 (S.D.N.Y.1979)..................................................... 15

*Buti v. Perosa, S.R.L.*,

    139 F.3d 98 (2d Cir. 1998)................................................................ 12

*Chloé v. Queen Bee of Beverly Hills, LLC*,

    616 F.3d 158 (2d Cir.2010)........................................................... *passim*

*Cutco Industries, Inc. v. Naughton*,

    806 F.2d 361 (2d Cir.1986)............................................................... 15

*DirecTV Latin Am., LLC v. Park 610, LLC*,

    691 F. Supp. 2d 405 (S.D.N.Y. 2010) ............................................. 18

*Druck Corp. v. Macro Fund (U.S.) Ltd.*,

    102 F. App'x 192 (2d Cir. 2004) ..................................................... 15

*Dubin v. E.F. Hutton Grp. Inc.*,

    695 F. Supp. 138 (S.D.N.Y. 1988)................................................... 17

*Eades v. Kennedy, PC Law Offices*,

    799 F.3d 161 (2d Cir. 2015)................................................... 8, 18, 20

*Energy Brands Inc. v. Spiritual Brands, Inc.*,

    571 F. Supp. 2d 458 (S.D.N.Y. 2008) ............................................. 11

*Fantis Foods, Inc. v. Standard Importing Co.*,

    49 N.Y.2d 317 (1980) …………………………………………………………………..15

*Fica Frio, Ltd. v. Seinfeld*,

 2020 WL 364093 (S.D.N.Y. 2020) ............................................................ 13, 14

*Foot Locker Retail, Inc. v. SBH, Inc.*,

 2005 WL 91306 (S.D.N.Y. 2005) ................................................................ 20

*Freeplay Music, LLC v. Rigol Techs. USA, Inc.*,

 2020 WL 564232 (S.D.N.Y. Feb. 4, 2020) .................................................. 15

*Gabriel Capital, L.P. v. Caib Investmentbank Aktiengesellschaft*,

 28 A.D. 3d 376 (2006) ................................................................................ 10

*GTFM, Inc. v. Fubutu Home & Educ. Media, Inc.*,

 2003 WL 22439791 (S.D.N.Y. Oct. 27, 2003) ……………………………………13

*Gucci Am., Inc. v. Frontline Processing Corp.*,

 721 F. Supp. 2d 228 (S.D.N.Y. 2010) ....................................................... 13

*Gulf Ins. Co. v. Glasbrenner,*

 417 F.3d 353 (2d Cir.2005)......................................................................... 21

*Hargrave v. Oki Nursery, Inc.*,

 636 F.2d 897 (2d Cir. 1980).................................................................. 11, 14

*K.A. Holdings Ltd. of NY v. Chagaris,*

 2009 WL 10685159 (S.D.N.Y. 2009) ........................................................ 21

*Kernan v. Kurz-Hastings, Inc.*,

 175 F.3d 236 (2d Cir. 1999)........................................................................ 10

*Kravitz v. Binda*,

 2020 WL 927534 (S.D.N.Y. 2020) ............................................................ 18

*LaFaro v. New York Cardiothoracic Group, PLLC,*

 570 F.3d 471 (2d Cir.2009)........................................................................... 7

*Lankau v. Luxoft Holding, Inc.*,

 266 F. Supp. 3d 666 (S.D.N.Y. 2017) ....................................................... 17

*Lewis v. Madej,*

 2015 WL 6442255 (S.D.N.Y. 2015).................................................... 12, 13

*Licci v. Lebanese Canadian Bank, SAL,*

 732 F.3d 161 (2d Cir.2013).................................................................... 7, 19

*Loginovskaya v. Batratchenko*,

 764 F.3d 266 (2d Cir. 2014).................................................................. 17, 22

iii

*Minnie Rose LLC v. Yu*,
  169 F. Supp. 3d 504 (S.D.N.Y. 2016) ............................................................ 16

*N.Y. Mercantile Exch. v. Cent. Tours Int'l, Inc.*,
  1997 WL 370600 (S.D.N.Y. 1997) ................................................................. 21

*Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.*,
  51 F. Supp. 2d 457, 467 (S.D.N.Y.1999) ……………………………………22

*Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  2006 WL 559811 (S.D.N.Y. Mar. 7, 2006) …………………………………..19

*Pilates, Inc. v. Pilates Inst., Inc.*,
  891 F. Supp. 175 (S.D.N.Y. 1995) …………………………………………….....10

*Princeton Pike Park, Inc. v. High-Tec, Inc.*,
  1990 WL 96755 (S.D.N.Y. 1990) ................................................................... 21

*Related Companies, L.P. v. Ruthling*,
  2017 WL 6507759 (S.D.N.Y. 2017) ........................................................ *passim*

*Retail Software Servs., Inc. v. Lashlee*,
  854 F.2d 18 (2d Ci. 1988)……………………………………………………10

*Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp.*,
  2015 WL 13019620 (S.D.N.Y. Sept. 21, 2015) ............................................. 15

*Rosenblatt v. Coutts & Co. AG*,
  750 F. App'x 7 (2d Cir. 2018) ........................................................................ 18

*Rosenman & Colin LLP v. Sandler*,
  2002 WL 83657 (S.D.N.Y. Jan. 18, 2002) ..................................................... 21

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007)............................................................................. 7

*Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*,
  156 F. Supp. 3d 348 (E.D.N.Y. 2016) ...................................................... 9, 21

*Schenk v. Red Sage, Inc.*,
  1994 WL 18630 (S.D.N.Y. 1994)................................................................... 16

*Mills v. Polar Molecular Corp.*,
  12 F.3d 1170 (2d Cir. 1993)........................................................................... 17

*Siegel v. Ford*,
  2017 WL 4119654 (S.D.N.Y. 2017) .............................................................. 21

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
    450 F.3d 100 (2d Cir. 2006)............................................................ 8, 9

*Travel Leaders Grp., LLC v. Corley*,
    2019 WL 6647319 (S.D.N.Y. 2019)................................................ 9

*Yoder v. Orthomolecular Nutrition Inst., Inc.*,
    751 F.2d 555 (2d Cir. 1985)........................................................... 17

**Statutes**

Fed. R. Civ. P. 15(a) .......................................................................... 22

28 U.S.C. § 1391(b) ........................................................................... 21

N.Y. CPLR 302(a)(1)................................................................ 8, 15, 18

N.Y. CPLR 302(a)(3)(ii)........................................................... 8, 11, 15

Plaintiff Hong Liu ("Plaintiff") submits this memorandum of law, together with the annexed declaration of Hong Liu (the "Liu Declaration"), in opposition to the motion to dismiss submitted by defendants Faraday&Future Inc. ("Faraday"), Smart King Ltd. ("Smart King"), Jiawei Wang ("Jerry Wang"), and Chaoying Deng ("Chaoying Bossert" or "Deng") (collectively, "Defendants").[1]

## PRELIMINARY STATEMENT

This case arises out of fraudulent misrepresentations and omissions made by Defendants and Yueting Jia ("YT Jia" or "Jia") in order to induce Plaintiff to leave his prestigious and lucrative law practice in New York and join Faraday in California as Faraday's General Counsel. For years, Plaintiff, a highly respected and successful equity partner at the New York office of Mayer Brown LLP ("Mayer Brown"), had an active and lucrative legal practice counseling blue-chip clients and overseeing major business transactions related to Asia. Defendants needed Plaintiff to join Faraday, a designer and manufacturer of electric vehicles, in order to bolster Faraday's credibility with the company's stakeholders, as Faraday had sought but had failed to bring a viable electric car to market.

But inducing Plaintiff to leave behind his law practice while he was at the pinnacle of his career required Defendants to offer Plaintiff a cash and equity compensation package that was superior to what Plaintiff was earning as a senior partner at Mayer Brown. Accordingly, Defendants offered Plaintiff equity options in Smart King, Faraday's parent company, that were equal to two percent of the total equity in Smart King. At the time these options (the "Smart King

---

[1] All capitalized terms not otherwise defined herein have the same meaning ascribed to them in the Complaint. ECF 1. "¶__" are references to the paragraphs of the Complaint. Citations to "Def. Br. __" are to Defendants' Memorandum of Law Supporting Dismissal. ECF 21. Citations to "Liu Decl. __" are to the Declaration of Hong Liu, submitted herewith. Unless otherwise noted, all emphasis is added and all internal quotations and citations are omitted.

Options) were initially offered to Plaintiff, Defendants claimed that the options were worth tens of millions of dollars. To sweeten the deal and lead Plaintiff to believe that they could make good on their compensation commitments to Plaintiff, Defendants represented that, through a private Series A offering, Smart King had received $2 billion in funding from Evergrande Health Industry Group Ltd. ("Evergrande") at a valuation of $4.5 billion. At that valuation, Plaintiff's Smart King Options were worth $90 million. In January 2018, after months of negotiations and in reliance on these representations, Plaintiff entered into an employment agreement with Faraday and subsequently resigned from Mayer Brown.

What Plaintiff did not know while he was negotiating the terms of his employment was that Defendants' representations about the $2 billion investment from Evergrande were lies. Indeed, Plaintiff subsequently learned that at the time Defendants claimed that Evergrande had purportedly invested $2 billion in Smart King, in reality Evergrande had invested only $300 million. Given the $1.7 billion difference in funding, Plaintiff's Smart King Options were worth materially less than Defendants had represented.

In their present Motion, Defendants argue that this Court does not have personal jurisdiction over them and that venue is improper in this District. Defendants are wrong on both counts. Defendants rest a bulk of their argument on bases for jurisdiction which the Complaint never alleges, while disregarding critical allegations that warrant the exercise of jurisdiction and finding that venue is proper.

For example, Plaintiff is a resident of New York. The bulk of Plaintiff's employment negotiations took place while Plaintiff was in New York. Defendants misrepresented the value of Plaintiff's equity in Smart King to Plaintiff while Plaintiff was in New York. Plaintiff relied on these misrepresentations while in New York. Plaintiff entered into the Employment Agreement

with Faraday while he was in New York. A securities transaction concerning ownership of Plaintiff's Smart King Options took place in New York. The Court need not look any further to determine that it has jurisdiction over Defendants.

Defendants' Motion does not – and cannot – explain how these powerful facts are deficient. The Complaint and supporting Liu Declaration amply set forth cogent reasons for this Court's exercising jurisdiction over Defendants and why venue properly lies in this District. Accordingly, Defendants' motion should be denied in its entirety.

## SUMMARY OF THE COMPLAINT'S RELEVANT ALLEGATIONS

Prior to the events that led to the claims alleged in the Complaint, Plaintiff, a long-time resident of New York, was a highly-trained, successful New York-based attorney with a prestigious and lucrative practice at a major global law firm. ¶¶1, 8, 15-26. Plaintiff is a graduate of Peking University Law School and Harvard Law School and holds an MBA from the University of Oxford. ¶16. As an attorney, he has worked as the general counsel for China's national securities regulator, as the managing director of a New York-based global investment bank, and, since 2005, has served in senior partnership positions in the New York offices of at least four major global law firms. ¶¶18, 20-22. Central to Plaintiff's professional success was that, over the course of Plaintiff's career, Plaintiff had developed a highly active and sophisticated legal practice, focusing on corporate clients based in China and throughout Asia. ¶23.

From April 2014 to February 2018, Plaintiff was an equity partner in the New York office of Mayer Brown. ¶22. Plaintiff's practice was recognized for its high-profile clients, large deal size, continuing and repeat business, and optimal realization rates. In each year of his tenure at Mayer Brown, Plaintiff was promoted within the firm's equity partnership, rising to senior partner.

¶¶22-25.  Throughout his career and as a result of his legal skill and success, Plaintiff has been the recipient of numerous accolades, promotions, and awards.  ¶¶18-19, 24-26.

It was specifically because of Plaintiff's professional experience, reputation, and success that Defendants sought Plaintiff's employment.  ¶27.  Indeed, Defendants needed Plaintiff, as for years Faraday been, without success, seeking to develop and market a viable electric car; the addition of Plaintiff, a globally-respected professional with decades of experience, would bolster Faraday's credibility with its stakeholders.  ¶¶27-28.

Defendants knew however that Plaintiff would not leave his extraordinarily successful legal practice in New York unless they could induce him to believe that Faraday would offer a package of cash and equity compensation that was superior to what he was earning at Mayer Brown, and that Faraday had actually raised sufficient capital to make good on its compensation commitments to Plaintiff, including evidence of the value of the equity promised by Defendants to Plaintiff.  ¶33.  At the heart of Defendants' equity promise to Plaintiff was equity in Smart King, Faraday's parent company, which Plaintiff would receive pursuant to his employment with Faraday.  *See* ¶¶33-55; Liu Decl. ¶¶4-12.

Defendants began their campaign to induce Plaintiff to leave his law practice and join Faraday in the fall of 2017.  ¶¶27-36; Liu Decl. ¶¶3-8.  Specifically, on October 15, 2017, when Plaintiff was in New York, he was contacted by phone by Yanfeng Wang ("Junmin Wang" or "Michael Wang"), on behalf of Jia, Faraday, and Smart King, and was told that Jia was interested in Plaintiff's joining Faraday in a senior management position.  ¶31; Liu Decl. ¶3.  During that initial phone call, Yanfeng Wang also explained that, as part of Plaintiff's Faraday compensation package, he would be granted securities in Smart King, a necessary benefit for Plaintiff in connection with his considering potential employment with Faraday.  Liu Decl. ¶¶3-4.  Then, on

October 25, 2017, Jiawei Wang ("Jerry Wang"), then Faraday's president, chief financial officer and a director of Faraday and Smart King, on behalf of Jia, Faraday, and Smart King, sent Plaintiff, while Plaintiff was in New York, the purported value of the Smart King Options he'd receive upon joining Faraday: the 2% equity interest was at that time valued at $43 million.  ¶34; Liu Decl. ¶¶6-7.

Between November 2017 and February 2018, Plaintiff, while in New York, continued to negotiate his potential Faraday employment with Jia, Jerry Wang, and Chaoying Deng ("Deng"), then president and director of Smart King and vice president of Faraday.  ¶¶32-42; Liu Decl. ¶¶6-11, 18.  These negotiations took place over the phone and by email.  Liu Decl. ¶8.  Specifically, in January 2018, while Plaintiff was in New York, and knowing how important it was for Plaintiff to believe that Faraday was a financially viable company, Jia and Jerry Wang represented to Plaintiff that Evergrande, a major Chinese conglomerate, was investing $2 billion in Smart King in a private Series A offering.  ¶35; Liu Decl. ¶9.  Later in January (and then again early in February 2018), while Plaintiff was in New York, Jia, Jerry Wang, and Deng represented to Plaintiff that Evergrande had completed its $2 billion Series A investment in Smart King, causing the value of Smart King to be approximately $4.5 billion and purportedly inflating the value of Plaintiff's Smart King Options from $43 million to $90 million.   ¶36; Liu Decl. ¶10.

Plaintiff relied on Defendants' representations concerning the value of Smart King and the Smart King Options.  Liu Decl.  ¶11.  Indeed, Plaintiff traveled to California to continue to negotiate his Faraday employment with Jia in reliance on these representations – representations which Defendants continued to tout during these California negotiations.  ¶37.

For verification of these representations, during these California meetings, as well as in prior and subsequent employment-related negotiations when Plaintiff was in New York, Plaintiff

repeatedly requested to view the Series A documents and attempted to inquire about the details of the Evergrande transaction. ¶38; Liu Decl. ¶20. However, citing confidentiality obligations to Evergrande, Jia and Jerry Wang refused to provide Plaintiff with the relevant documentation and details of the Evergrande transaction but assured Plaintiff that the Series A transaction was handled by reputable international law firms, including Sidley Austin LLP and that the transaction was valid and effectuated. ¶38; Liu Decl. ¶20.

It was not, and Defendants' representations concerning the Evergrande investment were false and misleading. Smart King never received $2 billion from Evergrande. ¶39. Instead, on or about November 30, 2017, Evergrande had invested only $300 million in Smart King, and Evergrande would invest a total of only $800 million by mid-2018 before terminating its funding relationship with Smart King. ¶39. Defendants knew these facts and concealed them from Defendant for the purpose of inducing him to leave his law practice and join Faraday. ¶39.

Unaware that Jia, Jerry Wang, and Deng had materially misrepresented the fact that Smart King had received $2 billion from Evergrande, on or about January 25, 2018, Plaintiff entered into the Employment Agreement with Faraday, which incorporated the misrepresentations concerning the Evergrande investment and the purported value of Plaintiff's Smart King Options. ¶43; Liu Decl. ¶14. Plaintiff signed the Employment Agreement in New York and electronically sent the signed agreement to Defendants in California. ¶44; Liu Decl. ¶14. That same day, Plaintiff, while in New York, received a fully-executed copy of the Employment Agreement from Defendants. Liu. Decl. ¶14. Pursuant to the Employment Agreement, Plaintiff would serve as Faraday's Global Chief Administrative Officer, Global General Counsel, and Global Senior Advisor, as well as serving as a senior board member. ¶46.

In February 2018, in reliance on Defendants' misrepresentations concerning the value of Smart King and the Smart King Options, Plaintiff resigned from his partnership at Mayer Brown. ¶59. Shortly thereafter, he began working at Faraday, and, in the spring of 2018, Plaintiff moved his family from New York to California. ¶¶60-61.

It was only after Plaintiff began working at Faraday that Plaintiff learned the truth about the Evergrande Series A investment. Having obtained the documents reflecting Evergrande's actual investment, Plaintiff discovered that the Series A investment was never materially completed, that Jia, Jerry Wang, and Deng had misrepresented the true value of the Smart King Options, and that, in reality, those options were worth millions of dollars less than were represented to Plaintiff during the negotiation of his employment contract with Faraday. ¶39; Liu Decl. ¶21.

## ARGUMENT

When deciding a motion to dismiss under Federal Rule of Procedure Rule 12(b), a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. New York Cardiothoracic Group, PLLC,* 570 F.3d 471, 475 (2d Cir. 2009). "In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists." *Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161, 167 (2d Cir.2013). In evaluating whether the requisite showing has been made, a district court construes the pleadings and any supporting materials in the light most favorable to the plaintiff. *Chloé v. Queen Bee of Beverly Hills, LLC,* 616 F.3d 158, 163 (2d Cir.2010).[2]

---

[2] On a motion to dismiss, a district court may consider facts outside the complaint contained in documents of public record. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

# I. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

A court will deny a defendant's 12(b)(2) motion to dismiss where the plaintiff makes a showing that: (i) the forum's long-arm statute permits personal jurisdiction, and (ii) personal jurisdiction comports with due process protections under the Constitution. *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015).

The Complaint alleges at least two statutory bases for personal jurisdiction over Defendants: (i) CPLR § 302(a)(3)(ii) and (ii) CPLR § 302(a)(1). Perplexingly, a bulk of Defendant's Brief addresses bases for jurisdiction which the Complaint never alleges, rendering many of Defendants' arguments irrelevant.[3] Moreover, Defendants' scant contentions in response to the Complaint's actual allegations fail, and Defendants' motion to dismiss should be denied.

## A. The Court Has Personal Jurisdiction Over Defendants Pursuant To CPLR § 302(a)(3)(ii)

Under CPLR 302(a)(3)(ii), a district court looks to a five-factor tests to determine whether it will assert personal jurisdiction over a defendant: (i) that defendant committed a tortious act outside the state; (ii) that the cause of action arises from that act; (iii) that the act caused injury to a person or property within the state; (iv) that defendant expected or should reasonably have expected the act to have consequences in the state; and (v) that defendant derived substantial revenue from interstate or international commerce. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006); *see* N.Y. C.P.L.R. 302(a)(3)(ii).

---

[3] Defendants maintain that that there is no basis for general jurisdiction because (i) no defendant is domiciled in New York; and (ii) no defendant has continuous and systematic affiliations with New York. *See* Def. Br. at 5-7. However, Plaintiff does not allege that personal jurisdiction exists pursuant to general jurisdiction. Accordingly, sections I.A.a and I.A.b of Defendants' Brief have no bearing here and should be disregarded.

Defendants do not challenge the first, second, fourth, and fifth of these elements. Accordingly, four of these five elements are not in dispute. *See* Def. Br. at 11-12.[4] That notwithstanding, the Complaint adequately alleges all of them.

### 1. Defendants Committed Tortious Acts In California, And The Complaint's Causes Of Action Arise From Those Acts

The first two elements are straightforward. *Travel Leaders Grp., LLC v. Corley*, 2019 WL 6647319, at *3 (S.D.N.Y. Dec. 5, 2019). To satisfy the first two elements, the plaintiff need not actually prove that defendant committed a tort but rather need only state a colorable cause of action for that tort. *See Sole Resort, S.A. de C.V.*, 450 F.3d at 106.

Here, the Complaint alleges that Defendants, while in California, through their materially false and misleading statements and omissions concerning the artificially inflated value of the Smart King Options, fraudulently induced Plaintiff to leave his extraordinarily well-paying law partnership in New York, move to California, and serve as General Counsel for Faraday. ¶¶15-55; Liu Decl. ¶¶2-21. The Complaint alleges that this misconduct gives rise to Plaintiff's causes of action for, *inter alia*, fraudulent inducement, intentional infliction of emotional distress, and negligent misrepresentation. *See, e.g.,* ¶¶1-6, 27-55, 59-63, 76-108, 124-30, 136-46. Nothing more is required for the first two elements. *See Sole Resort, S.A. de C.V.*, 450 F.3d at 106 (tort of fraudulent inducement conferred specific jurisdiction on defendant where defendant sent plaintiff fraudulent business plan from outside New York); *Related Companies, L.P. v. Ruthling*, 2017 WL 6507759, at *4 (S.D.N.Y. Dec. 18, 2017) (allegations concerning misrepresentations made in

---

[4] *See also Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, 156 F. Supp. 3d 348, 357 (E.D.N.Y. 2016) (where defendant did not challenge the first, second, fourth, and fifth elements of the jurisdictional test on a motion dismiss, the court accepted those elements to have been satisfied); *Related Companies, L.P. v. Ruthling*, 2017 WL 6507759, at *4 (S.D.N.Y. Dec. 18, 2017) (elements not challenged were accepted as adequately pled).

California about financial condition of company gave rise to colorable torts of fraud and negligent misrepresentation).[5]

## 2. Defendants Should Have Expected Their Fraudulent Misrepresentations To Have Consequences In New York

The next undisputed element, that Defendants expected or should reasonably have expected their actions to have consequences in New York, is demonstrated where a plaintiff shows "a purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court." *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999). A party sending misrepresentations into New York should reasonably expect those acts to have consequences in New York. *Gabriel Capital, L.P. v. Caib Investmentbank Aktiengesellschaft*, 28 A.D. 3d 376, 377 (2006).

Here, Defendants directed numerous misrepresentations to Plaintiff while he was in New York. For example:

- Defendants, initially through Yanfeng Wang, first approached Plaintiff in October 2017 in New York. ¶31; Liu Decl. ¶¶4-5. The purpose was to lure Plaintiff away from New York and his law practice and to California. ¶32.

- Throughout October and November 2017, while Plaintiff was in New York and by email and telephone, Jerry Wang, on behalf of Jia and Faraday, continued to negotiate Plaintiff's possible employment with Faraday, including sending to Plaintiff in New York the purported value of the Smart King options which would be granted to Plaintiff. ¶¶34-36; Liu Decl. ¶¶6-7, 18.

---

[5] Defendants make no attempt to establish that the Court does not have personal jurisdiction over any defendant in particular, including defendants Jerry Wang and Deng. This is of no matter. The Complaint and the Liu Declaration set forth facts that establish that Jerry Wang and Deng were central players in the torts committed against Plaintiff. *See, e.g.*, ¶¶31-39, 42, 45, 53; Liu Decl. ¶¶6-15, 18, 20. Indeed, courts routinely find personal jurisdiction exists over out-of-state corporate officers based on the tortious acts of a corporate entity when the corporate officers are shown to have personally participated in those tortious acts. *See, e.g.*, *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 181 (S.D.N.Y. 1995) "[a] corporate president who has a financial interest in the company and the ability to supervise or control an infringing activity will be held personally liable."); *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988) (personal jurisdiction over out-of-state corporate officers where corporate officers were "primary actor[s] in the transaction in New York" that gave rise to the litigation, and not merely "some corporate employee[s] ... who played no part in" the underlying acts).

- In January 2018, while Plaintiff was in New York, Jia, Jerry Wang, and Deng represented to Plaintiff that Smart King was in the process of receiving a multi-billion dollar investment from Evergrande through a Series A offering, and, later in January 2018, also while Plaintiff was in New York, that this Series A offering had been completed, with Evergrande investing $2 billion in Smart King, causing the value of Smart King to balloon to $4.5 billion and the value of Plaintiff's Smart King Options to more than double to $90 million. ¶¶35-36; Liu Decl. ¶¶9-11.

- Between October 2017 and January 2018, Wang sent Plaintiff in New York numerous drafts of the Employment Agreement which incorporated Defendants' misrepresentations and omissions concerning Smart King's having received $2 billion from Evergrande and the resulting value of the Smart King options, the final draft of which Plaintiff signed in New York. ¶¶42-44, 52-5; Liu Decl. ¶¶14-15.

- In February 2018, Plaintiff, while in New York, signed the Director Agreement, which included the materially false and misleading statements incorporated into the Employment Agreement. ¶¶56-58; Liu Decl. ¶¶16-17.

These misrepresentations, directed to Plaintiff in New York, satisfy this fourth element. *See Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 898 (2d Cir. 1980) (by directing misrepresentations to New York, defendant reasonably expected its actions would have consequences in New York.); *Related Companies, L.P.*, 2017 WL 6507759, at *5 (same).

### 3. Defendants Derive Substantial Revenue From Interstate Or International Commerce

As to the fifth element (which Defendants also do not challenge), that a defendant derives substantial revenue from interstate or international commerce, there is no bright-line rule regarding when a specific level of revenue becomes substantial for purposes of 302(a)(3)(ii). *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 468 (S.D.N.Y. 2008). This prong represents a "bigness requirement," designed to protect local businesses by assuring that the defendant is economically big enough to defend suit in New York. *Related Companies, L.P. v. Ruthling*, 2017 WL 6507759, at *7.

Here, both Faraday and Smart King derive substantial revenue from interstate or international commerce. As a preliminary matter, and as of the date of this filing, Faraday has

filed numerous patent applications and trademarks with the United States Patent and Trademark Office ("USPTO"), demonstrating for the purposes of jurisdiction that it derives substantial revenue from international or interstate commerce. *See Lewis v. Madej*, 2015 WL 6442255, at *5 (S.D.N.Y. Oct. 23, 2015) (substantial revenue demonstrated because "[b]y filing trademark applications, [defendant] represented that it provides business services in interstate or foreign commerce"); *see also Buti v. Perosa, S.R.L.,* 139 F.3d 98, 102 (2d Cir. 1998) ("The Lanham Act authorizes trademark registration only for marks that are 'used in commerce,'" and "commerce" is defined as "all commerce which may lawfully be regulated by Congress," that is, interstate or international commerce).[6]

Moreover, both Smart King and Faraday hold themselves out as companies engaging in international or interstate commerce. For example:

- Jia, Jerry Wang, and Deng represented to Plaintiff that Smart King has been valued at $4.5 billion and was raising billions of dollars from Evergrande in China. ¶¶4, 35.

- Smart King is a Cayman Islands company with its headquarters in California. ¶12.

- Faraday is a California-based corporation with headquarters in Los Angeles and has offices in Silicon Valley, Beijing, Shanghai, and Chengdu, and it holds itself out as a "global shared intelligent mobility ecosystem," seeking to make electronic automobiles for the world market.[7]

- Under the Employment Agreement, Plaintiff would serve as Faraday's "Global Chief Administrative Officer, Global General Counsel and Global Senior Advisor." ¶46.

- Plaintiff was assured by Defendants that the securities transactions related to the Smart King options were handled by reputable international law firms, including Sidley Austin LLP. ¶38; Liu Decl. ¶20.

---

[6] Faraday has filed at least 16 trademarks and 50 patents with the PTO. Plaintiff has discovered this information from reviewing Faraday's public filings with the USPTO, as of March 6, 2020.

[7] *See* https://www.ff.com/us/our-company/ (last visited March 6, 2020).

Accordingly, Faraday and Smart King derive substantial revenue from international or interstate commerce. *See Lewis*, 2015 WL 6442255, at *5 (even in the absence of a showing that corporate defendant was legitimate business, that company held itself out to conduct international or interstate revenue, including by soliciting business through its website, satisfied substantial revenue test); *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 242 (S.D.N.Y. 2010) (substantial revenue demonstrated because plaintiff "allege[d] that [corporate defendants] h[e]ld themselves out as national, if not international, companies").[8]

### 4. Defendants' Tortious Acts Injured Plaintiff In New York

The only element of this five-part jurisdictional test which Defendants challenge is the situs of injury element – that defendants' acts caused injury to a person or property within New York. Defendants maintain that the situs of injury here is California. Def. Br. at 12. They are wrong.

Courts examining cases involving misrepresentations or fraud hold that the situs of injury is where the first effect of the tort took place, such as reliance on defendant's misrepresentations. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 792 (2d Cir. 1999) (determining New York was situs of injury because first step in the process that caused plaintiff's economic loss was plaintiff's reliance on defendants' misrepresentations, and that reliance occurred in New York); *Fica Frio, Ltd. v. Seinfeld*, 2020 WL 364093, at *7 (S.D.N.Y. Jan. 22, 2020) (noting that in cases arising out of misrepresentations, "the Court of Appeals would identify the place of reliance as the place of direct injury.").

---

[8] The substantial international or interstate revenue of Smart King and Faraday is to be imputed to Jerry Wang and Deng, as senior officers and directors of these companies. ¶32; *see Related Companies, L.P.*, 2017 WL 6507759, at *7 (imputing substantial revenue of company to employee of company because employee was paid by company); *GTFM, Inc. v. Fubutu Home & Educ. Media, Inc.*, 2003 WL 22439791, at *4 (S.D.N.Y. Oct. 27, 2003) (conferring personal jurisdiction on officers of foreign corporate entity in part because officers "stood to benefit" from corporate sales).

Defendants maintain that the first effect of the fraud occurred in California. Def. Br. 12. That is, however, not what the Complaint alleges. Indeed, the Complaint alleges that Defendants' fraudulent inducement of Plaintiff began while Plaintiff was in New York. ¶27. For example:

- In October 2017, Yanfeng Wang initiated discussions with Plaintiff concerning employment at Faraday, explaining that he would receive equity as part of his Faraday compensation package. ¶31; Liu Decl. ¶3.

- Then, in October and November 2017, Plaintiff, while in New York, began relying on Defendants' misrepresentations concerning the value of the Smart King options he would receive pursuant to the Employment Agreement. ¶46; Liu Decl. ¶¶4-8.

- In January 2018, while Plaintiff was in New York and **before** Plaintiff traveled to California, Defendants represented that Evergrande had invested $2 billion in Smart King and that, accordingly, the value of Plaintiff's Smart King Options had doubled to approximately $90 million. ¶¶35-36; Liu Decl. ¶¶7-10.

- Indeed, it was Plaintiff's reliance on these misrepresentations which induced Plaintiff to travel to California in January 2018 to further discuss his potential employment with Faraday. ¶¶35-37; Liu Decl. ¶11.

- Plaintiff, while in New York, relied on Defendants' misrepresentations concerning the terms of his Faraday compensation package and the value of the Smart King Options in deciding to accept employment with Faraday, resign his partnership from Mayer Brown in New York, and move himself and his family from New York to California. ¶¶40, 44-55, 59-61; Liu Decl. ¶¶14, 19.

Accordingly, New York, not California, is the situs of Plaintiff's injury. *See Hargrave v. Oki Nursery, Inc.*, 636 F.2d at 900 (injury was immediately felt in New York where plaintiffs … where they were located when they received the misrepresentations"); *Fica Frio, Ltd.*, 2020 WL 364093, at *7 (location of injury was New York because plaintiff relied on defendants' misrepresentations while in New York).[9]

---

[9] Defendants' argument that the proper situs of injury is California amounts at best to a question of fact, militating in favor of Plaintiff. *See A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 80 (2d Cir. 1993) (on motion to dismiss, all factual "doubts are to be resolved in the plaintiff's favor."); *Bankers Tr. Co. v. State St. Bank & Tr. Co.*, 1998 WL 355418, at *4 (S.D.N.Y. July 2, 1998) (noting that "reliance is an issue of fact" that is inappropriate to decide on a motion to dismiss).

Defendants' cited authorities either support jurisdiction over Defendants or are inapposite. For example, *Bank Brussels Lambert* warrants that jurisdiction be exercised over Defendants. In that case, the Second Circuit determined

## B. The Court Has Personal Jurisdiction Over Defendants Pursuant To CPLR § 302(a)(1)

Under CPLR Section 302(a)(1) a court may exercise specific jurisdiction over a non-domiciliary where the foreign defendant transacts business within New York, and the claim against the foreign defendant arises directly out of this activity. N.Y. CPLR § 302(a)(1). Proof of one purposeful transaction or single act in New York is sufficient to invoke jurisdiction. *Druck Corp. v. Macro Fund (U.S.) Ltd.*, 102 F. App'x 192, 195 (2d Cir. 2004). A defendant "transacts business" within the meaning of section 302(a)(1) by "purposefully avail[ing] itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Chloé*, 616 F.3d at 170.

### 1. Defendants Transacted Business In New York By Establishing An Employment Contract With Plaintiff

The establishment of an employment contract by a foreign defendant for duties performed by a New York plaintiff outside of New York gives rise to personal jurisdiction over the foreign defendant. *Cutco Industries, Inc. v. Naughton,* 806 F.2d 361, 366 (2d Cir.1986) (noting that even discussions giving rise to "the likelihood of a more solid business relationship between the parties" conferred jurisdiction). It is not a bar to jurisdiction that such negotiations are preliminary. *Bastille Properties, Inc. v. Hometels of Am., Inc.,* 476 F. Supp. 175, 177 (S.D.N.Y.1979).

---

that the situs of injury was New York because plaintiff there relied on defendants' misrepresentations and such reliance occurred in New York. *See Bank Brussels Lambert*, 171 F.3d at 792 ("Under the situs-of-injury test, the 'original event' that caused the economic harm to BBL was thus the disbursement of the funds, and BBL's injury occurred in New York for § 302(a)(3) purposes.").

*Freeplay Music LLC* is inapposite because it arose out of alleged copyright infringement, requiring a different analysis for determining the situs of injury than applied here. *See Freeplay Music, LLC v. Rigol Techs. USA, Inc.*, 2020 WL 564232, at *6 (S.D.N.Y. Feb. 4, 2020).

Defendants' remaining authorities are unavailing. *See Ritchie Capital Mgmt., L.L.C. v. Costco Wholesale Corp.*, 2015 WL 13019620, at *7 (S.D.N.Y. Sept. 21, 2015) (specifically noting that "These allegations, which do not address where Plaintiffs acted in reliance on the purported misrepresentations, are not sufficient to show that Costco's acts caused injury in New York."); *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326-27, n. 3 (1980) (party's claim for conversion was based on "speculative" injury arising from loss at sea of barrels of cheese en route to Chicago and thus had no connection to misrepresentations or omissions directed to plaintiff in New York).

Here, that Plaintiff negotiated and entered into the Employment Agreement with Defendants while Plaintiff was in New York confers personal jurisdiction over Defendants. These contract negotiation-related activities include:

- Jerry Wang, by email, sending Plaintiff the purported value of the options Plaintiff would receive if Plaintiff joined Faraday. ¶33; Liu Decl. ¶¶6-7.

- Defendants misrepresenting over the phone to Plaintiff that Smart King was in the process of and then received $2 billion from Evergrande, causing the value of Plaintiff's Smart King Options to more than double. ¶36; Liu Decl. ¶¶9-11.

- Between October 2017 and January 2018, Jerry Wang, by email, sending Plaintiff, who was in New York, various drafts of the Employment Agreement, and by telephone, continuing to negotiate the terms of the Employment Contract. ¶42; Liu Decl. ¶¶6-11.

- Plaintiff signed both the Employment Agreement and the Director Agreement in New York and electronically sent the signed agreements from New York back to Defendants. ¶44; Liu Decl. ¶¶14-17.

Accordingly, personal jurisdiction exists. *See Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 514 (S.D.N.Y. 2016) (numerous electronic communications to Plaintiff in New York and sending Plaintiff in New York fraudulent financial statements supported personal jurisdiction); *Schenk v. Red Sage, Inc.*, 1994 WL 18630, at *9 (S.D.N.Y. Jan. 21, 1994) ("telephone contacts between a plaintiff in New York and an out-of-state defendant will support the exercise of personal jurisdiction over the defendant"; personal jurisdiction supported where corporate defendant faxed employment contract to plaintiff in New York).[10]

---

[10] Defendants' argument that jurisdiction over Wang or Deng is inappropriate because Wang and Deng did not come to New York to negotiate Plaintiff's employment (Def. Br. at 9, fn. 5) is without merit. In cases such as this, where negotiations are conducted over the phone and by email, there exists no requirement that individuals be physically present in New York for such negotiations to confer jurisdiction over defendants. *See Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 30-31 (2d. Cir. 1996) (jurisdiction asserted even though defendants did not negotiate or execute agreements with plaintiff in New York and rarely, if ever, travelled to New York to meet with plaintiff regarding performance of contracts); *see also Chloé*, 616 F.3d at 169 ("defendant need not be physically present in New York to transact business [in New York] …").

### 2. Defendants Transacted Business In New York By Executing A Securities Transaction In New York

An employment agreement containing the promise of the transfer of securities is a securities transaction under the federal securities laws. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Employment contracts promising shares as compensation are generally considered securities transactions within Rule 10b–5."). This is true even if the stock has not yet been transferred or the contract not fully performed. *See Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 559 (2d Cir. 1985); *Dubin v. E.F. Hutton Grp. Inc.*, 695 F. Supp. 138, 146 (S.D.N.Y. 1988) (a grant of equity over a six-year vesting period was a securities transaction covered by Section 10(b)). The transaction of a securities issuance pursuant to an employment agreement occurs when the employment offer is accepted. *Dubin.*, 695 F. Supp. At 145; *see also Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 679 (S.D.N.Y. 2017) (same; dismissed on grounds not applicable here). The location of a securities transaction is the place where the parties become bound and committed to perform their respective obligations – where "the seller incurred irrevocable liability … to deliver a security." *Loginovskaya v. Batratchenko*, 764 F.3d 266, 274 (2d Cir. 2014); *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 68 (2d Cir. 2012).

Defendants transacted business in New York by promising to offer Plaintiff options to purchase Smart King in connection with the Employment Agreement. ¶¶34-36, 50-51, 65; Liu Decl. ¶¶4, 7, 9-11. The securities transaction occurred when Plaintiff signed the Employment Agreement. ¶44; Liu Decl. ¶14. The location of the transaction was New York, as Defendants

became bound to deliver the Smart King Options when the transaction occurred – when Plaintiff was in New York.  Nothing more is required.[11]

## C. Personal Jurisdiction Over Defendants Comports With Due Process

To establish personal jurisdiction over a defendant, due process requires a two-step analysis: (i) that a defendant has "certain minimum contacts" with the relevant forum, and (ii) that the exercise of jurisdiction is reasonable in the circumstances." *Eades*, 799 F.3d at 168-69.  Both due process prongs are met here.

### 1.  Defendants Have Minimum Contacts With New York

Defendants conclusorily maintain that the Complaint does not allege minimum contacts between Defendants and New York.  Def. Br. at 13.  Defendants are wrong.

Minimum contacts exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there.  *Bank Brussels Lambert*, 305 F.3d at 127.  Where personal jurisdiction is found based on the "transacts business" prong of § 302(a)(1), the elements satisfying minimum contacts are also demonstrated.  *See Chloé*, 616 F.3d at 171; *Kravitz v. Binda*, 2020 WL 927534, at *8 (S.D.N.Y. Jan. 21, 2020) ("the assertion of personal jurisdiction over Defendants satisfies the minimum contacts prong of the due process requirement for the same reasons that it satisfies the "transacts business" prong of New York's long-arm statute, § 302(a)(1).").   Accordingly, for the same reasons why Defendants transacted business in New York (*see* Br. at I.B.1-2), Defendants have minimal contacts with New York.

---

[11] Defendants cited authorities are unavailing.  *See Rosenblatt v. Coutts & Co. AG*, 750 F. App'x 7, 10 (2d Cir. 2018) (there, unlike here, agreement did not concern plaintiff in his capacity as resident of New York and was executed outside New York); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 421 (S.D.N.Y. 2010) (unlike here, communications to New York had no business relationship to New York, and no transactions beyond electronic negotiations occurred in New York).

Moreover, where the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are the in-forum effects harmful to the plaintiff, due process is satisfied if the defendant expressly aimed its conduct at the forum. *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d at 173 (use of bank account based in New York constituted such conduct).

Here, Defendants emailed and called Plaintiff while Plaintiff was in New York for the purposes of negotiating the Employment Agreement. *See* Br. I.A.2, I.A.4, I.B.1. Defendants also fraudulently induced Plaintiff into signing the Employment agreement while Plaintiff was in New York by misstating the value of the Smart King Options. *See* Br. I.A.2., I.A.4. Such conduct was expressly aimed at New York. *See Related Companies, L.P.*, 2017 WL 6507759, at *9 (multiple emails and calls to New York allegedly made to convey false and misleading information to plaintiff constituted conduct expressly aimed at New York); *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 2006 WL 559811, at *7 (S.D.N.Y. Mar. 7, 2006) (mailing financial statements to New York that included misrepresentations about financial condition of investments was conduct aimed at New York).[12]

### 2. The Exercise of Jurisdiction Is Reasonable

Where a plaintiff makes the threshold showing of the minimum contacts required for the first due process prong, a defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable. *Bank Brussels Lambert*, 305 F.3d at 129. It is the exceptional situation where minimum contacts are met, but the exercise of jurisdiction is unreasonable. *Id.*

---

[12] Defendants fail to cite a single case supporting their argument that due process concerns are not met here.

Defendants have failed to meet this burden, raising a host of meritless arguments. For example, Defendants cite the burden of having to travel from California to New York. Def. Br. at 13. However, in a case such as this, where Smart King and Faraday are international businesses, the burden of travel expense is of no matter. *See Chloé*, 616 F.3d at 173 (generalized complaints of inconvenience arising from having defendant defend himself from suit in New York do not add up to "a compelling case that the presence of some other considerations would render jurisdiction unreasonable."); *Foot Locker Retail, Inc. v. SBH, Inc.*, 2005 WL 91306, at *6 (S.D.N.Y. Jan. 18, 2005) (even if litigating in forum distant from defendants' home was burdensome, it was reasonable for foreign corporation to be brought into New York court because "the conveniences of modern communication and transportation ease what would have been a serious burden only a few decades ago.").

Defendants also maintain that it would be unreasonable for the Court to exercise jurisdiction because the Employment Agreement is governed by California law and involves California entities. Def. Br. at 14. This argument is meritless. As a resident of New York (¶10, Liu Decl. ¶22), Plaintiff has an interest in adjudicating this case in the state of his residence, and "New York has a manifest interest in providing effective means of redress for its residents." *Eades*, 799 F.3d at 169. Likewise, it strains credulity for Defendants to propose that this Court is not perfectly capable of analyzing California contract law.[13]

---

[13] Again, Defendants fail to cite a single legal authority for the proposition that the Court's exercise of jurisdiction over Defendants is unreasonable. Defendants do, however, incorrectly state the applicable legal burden for determining whether jurisdiction is reasonable. *See* Def Br. at 14 ("exceptional circumstances do not exist to warrant personal jurisdiction.").

## II.     VENUE IS PROPER IN THE SOUTHERN DISTRICT OF NEW YORK

Venue is proper in a judicial district in which a substantial part of the events or omission giving rise to the claim occurred.  28 U.S.C. § 1391(b).[14]  Absent a formal hearing on a motion to dismiss, a plaintiff need only make a *prima facie* showing of venue to defeat the motion.  *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d 353, 355 (2d Cir.2005).  Generally, "courts are quite lenient in finding that a substantial part of the events occurs in a district."  *K.A. Holdings Ltd. of NY v. Chagaris*, 2009 WL 10685159, at *5 (S.D.N.Y. Nov. 13, 2009).

Here, Plaintiffs allege claims for, *inter alia*, securities fraud, fraudulent inducement, intentional infliction of emotional distress, and negligent misrepresentation.  ¶¶117-30, 136-46. These claims focus on alleged misrepresentations and omissions, many of which were directed toward Plaintiff while Plaintiff was in New York.  Such misconduct directed at Plaintiff is enough for venue purposes. *See Siegel v. Ford*, 2017 WL 4119654, at *7 (S.D.N.Y. Sept. 15, 2017) (venue was proper based on phone conversations alone in which fraudulent representations were made); *Sands Harbor Marina Corp.*, 156 F. Supp. 3d at 358; *N.Y. Mercantile Exch. v. Cent. Tours Int'l, Inc.*, 1997 WL 370600, at *4 (S.D.N.Y. July 1, 1997) (finding that venue was proper because "many of the fraudulent acts alleged either occurred in or have a substantial relationship to this venue"); *Princeton Pike Park, Inc. v. High-Tec, Inc.*, 1990 WL 96755, at *5 (S.D.N.Y. July 3, 1990) (directions communicated to plaintiff in in the Southern District of New York supports venue in the Southern District of New York).

Moreover, that Plaintiff negotiated and signed the Employment Agreement while in New York demonstrates that venue is proper in this District.  *See Rosenman & Colin LLP v. Sandler*,

---

[14] Defendants incorrectly cite to the wrong section of 28 U.S.C. § 1391 in their recitation of where venue can properly be found.  *See* Def. Br. at 14.

2002 WL 83657, at *2 (S.D.N.Y. Jan. 18, 2002); *see also Old Republic Ins. Co. v. Hansa World Cargo Serv., Inc.,* 51 F. Supp. 2d 457, 467 (S.D.N.Y.1999) (venue was proper based on negotiation and execution of contract in forum district). Additionally, that the securities transaction occurred in this District supports the finding of venue in this District. *See Loginovskaya*, 764 F.3d at 274.[15]

## **CONCLUSION**

For all the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety. Nevertheless, if the Court grants Defendants' motion in any part, Plaintiff requests the opportunity to replead. *See* Fed. R. Civ. P. 15(a).

Dated: March 6, 2020

New York, New York

<div style="margin-left: 40%;">

SEIDEN LAW GROUP LLP

/s/ Amiad Kushner
Amiad Kushner
469 Seventh Avenue, Fifth Fl.
New York, NY 10018
akushner@seidenlegal.com
(212) 523-0686

*Counsel for Plaintiff Hong Liu*

</div>

---

[15] Defendants' argument that venue does not lie in this District because of a venue clause in the Director's Compensation Agreement is a non-starter. Def. Br. at 15. Plaintiff brings no claims arising under a breach of the Director's Compensation Agreement. Moreover, that agreement is between Plaintiff and Jia, who is not a party to this action.

## CERTIFICATE OF SERVICE

I hereby certify that on this day I caused a true and correct copy of the foregoing to be filed using the Court's Electronic Filing System ("ECF System"). The document is available for viewing and downloading via the ECF System and will be served by operation of the ECF System upon all counsels of record.

Dated: March 6, 2020                                    **SEIDEN LAW GROUP LLP**

                                                        /s/ Amiad Kushner
                                                        Amiad Kushner