**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x
                           :

HONG LIU,                       :

            Plaintiff,      :

                         :    Case No.: 1:20-cv-00019-GBD

        -v.-              :

                         :

FARADAY&FUTURE INC., SMART KING  :
LTD., JIAWEI WANG, and CHAOYING   :
DENG,                        :

                         :

            Defendants.    :
---------------------------------------------------------x

## <u>DECLARATION OF HONG LIU</u>

I, Hong ("Henry") Liu, declare as follows:

1.      I am the plaintiff in the above-captioned matter. I make this declaration based on my own personal knowledge, and, if called upon to do so, could and would testify competently thereto.

2.      Between April 2014 and February 2018, I was an equity partner at the law firm of Mayer Brown LLP in the firm's New York office.

3.      On October 15, 2017, while I was in New York, I was first approached by phone by Yanfeng Wang ("Junmin Wang" or "Michael Wang"), on behalf of Yueting Jia ("YT Jia" or "Jia"), Faraday&Future Inc. ("Faraday") and Smart King Limited ("Smart King"). During that initial phone call, Michael Wang proposed to me the idea of coming to work for Jia at Faraday in a senior management position.

4.      During the initial phone call, Michael Wang explained that as part of my compensation package in connection with my working at Faraday, I would be granted securities in Smart King (as to the securities, the "Smart King Options").

5.      I would not have considered any employment opportunities with Faraday unless I was offered stock options of significant value.

6.     Throughout October and November 2017, while I was in New York, Jiawei Wang ("Jerry Wang"), on behalf of Jia and Faraday, sent me a multitude of emails and made numerous phone calls to me concerning my potential employment with Faraday.  During these phone calls and emails, Jia, Jerry Wang, and I negotiated the terms of my employment with Faraday.

7.     Pursuant to these negotiations, in October 2017 and while I was in New York, Jerry Wang emailed me a valuation of the Smart King Options I would receive if I joined Faraday. According to the valuation, the Smart King Options I would receive would be worth approximately $43 million, which was, at that time, the purported value of 2 percent of the total equity of Smart King.

8.     These negotiations with Jerry Wang, by telephone and email, continued through January 2018, all while I was in New York,

9.     In January 2018, while I was in New York, Jia and Jerry Wang informed me that Smart King was in the process of receiving a multi-billion dollar investment from a major investor later known as Evergrande Health Industry Group Ltd. ("Evergrande") through a Series A offering.

10.     Later in January 2018, also while I was in New York, Jia and Jerry Wang informed me that, in November 2017, Evergrande had completed a $2 billion Series A investment in Smart King, that Smart King had actually received the $2 billion from this major investor, later known as Evergrande, and that, as a result of the investment, Smart King was valued at approximately $4.5 billion.  In connection with these representations, Jia and Wang further explained that the Evergrande investment increased the value of my Smart King Options from approximately $43 million to $90 million.

11.     I relied on these representations and the terms of these negotiations, and, specifically the value of the Smart King Options, in deciding to travel to California to meet with Jia, Jerry Wang and others at Faraday and continue my employment negotiations.

12.     I later discovered that these representations concerning Evergrande's purported $2 billion investment in Smart King were false and that Jia and Jerry Wang had materially misrepresented

this investment and the value of the Smart King Options.

13.     After returning to New York from California, Jerry Wang and I continued to negotiate the terms of my employment, by phone and email.

14.     On January 26, 2018, while I was in New York, I signed the Employment Agreement with Faraday, which is dated January 25, 2018, as per Jerry Wang's request. The Employment Agreement incorporated the misrepresentations concerning the purported completion of the $2 billion Series A offering from Evergrande. Upon signing the Employment Agreement, I emailed the signed version of the Employment Agreement to Jerry Wang from New York.

15.     That same day, Jerry Wang arranged to email me, while I was in New York, a fully executed copy of the Employment Agreement he had signed on behalf of Faraday.

16.     On February 2, 2018, while I was in New York, I signed the Director Agreement, dated February 2, 2018. The Director Agreement incorporated the misrepresentations concerning the purported completion of the $2 billion Series A offering from Evergrande. Upon signing the Director Agreement as requested by Jia and Jerry Wang, I emailed the signed version of this agreement to Jerry Wang and Jia from New York.

17.     That same day, Jia emailed me through Jerry Wang, while I was in New York, a fully executed copy of the Director Agreement.

18.     From mid-October 2017 through early February 2018, Chaoying Deng ("Chaoying Bossert" or "Deng"), to induce me to join Faraday and Jia, had on numerous occasions represented to me the significant value of Smart King Options, including the increased value as a result of the completion of the $2 billion Series A investment. During this period of time, Deng communicated these representations about the purported value of the Smart King Options by phone, while I was in New York.

19.     On February 15, 2018, I voluntarily resigned my position as an Equity Partner at Mayer Brown. In February 2018, I relocated to California to begin working for Faraday. Shortly thereafter, my

family also relocated to California.

20.     In connection with the communications I had with Jia, Jerry Wang, and Deng concerning my employment with Faraday when I was in New York, I repeatedly requested to view the Series A documents and attempted to inquire about the details of the Evergrande transaction. Jia, Jerry Wang, and Deng however refused to provide me with the relevant documents and details of the transaction, citing confidentiality obligations to Evergrande. They nonetheless assured me that the Series A transaction was handled by reputable international law firms, including Sidley Austin LLP, and that I could be assured of the validity of the transactions and the truthfulness of their representations about the Series A offering.

21.     It was only after I had accepted my employment with Faraday and after I had resigned my position with Mayer Brown and started working a Faraday that I obtained the documents reflecting the Series A documentation, revealing the truth that the Series A investment was never materially completed, that Jia, Jerry Wang and Deng had misrepresented the true value of the Smart King Options, and that, in reality, the Smart King Options were worth millions of dollars less than they had represented to me.

22.     I am a resident of New York. I have maintained my New York residence and my New York-based bank accounts.

23.     In February 2018, pursuant to the terms of the Employment Agreement, my Faraday signing bonus was deposited into my New York-based bank account.

     I declare under penalty of perjury that the foregoing is, to the best of my knowledge and belief, true and correct.

Dated: March 6, 2020

New York, New York

_____
Hong Liu